UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

GUILLERMO VILLAVICENCIO,

Defendant.

Case No:  CR 09-00526 SBA

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Docket 44

Defendant Guillermo Villavicencio ("Defendant") is charged in a one-count Indictment with a violation of 18 U.S.C. § 1326(a) and (b)—Deported Alien Found in the United States.  The parties are presently before the Court on Defendant's Motion to Dismiss Indictment.  Dkt. 44.  Having read and considered the papers filed in connection with this matter, as well as the arguments of counsel, the Court hereby DENIES the motion for the reasons set forth below.

I.      **BACKGROUND**

A.      FACTUAL SUMMARY

Defendant Guillermo Villavicencio ("Defendant") was born in Nicaragua on June 1, 1966.  While living in Nicaragua, Defendant had two children with Magali Villavicencio ("Magali").  In November 1988, Defendant arrived in the United States, after illegally crossing the border in Texas and entering without inspection.  Magali came to the United States in 1993, and the two were married in 1994 in Maryland.

In 1996, Magali gave birth to Esperanza, who was born in Maryland and is thus a United States citizen.  In addition, in 2002, Defendant fathered another child, William, with a woman other than his wife.  William also is a United States citizen.

In March 2000, Defendant's 15-year old daughter and 14-year old son from Nicaragua moved to the United States to live with him and his wife.  On May 22, 2000, Defendant adjusted his status to that of a lawful permanent resident ("LPR") of the United States.

After his children moved to the United States, he began molesting and later raping his older daughter on at least three occasions.   Defendant subsequently admitted to five "sexual incidents" with her.  On March 15, 2002, Defendant pled guilty to second degree assault based on five sexual molestation incidents with his oldest daughter in violation of Article 27, Section 12A of the Maryland Annotated Code.  He was sentenced to eleven months in state prison.

### B.   REMOVAL PROCEEDINGS

Following his conviction, defendant was placed in removal (i.e., deportation) proceedings based on two grounds: (1) an aggravated felony conviction under INA § 237(a)(2)(E)(i), codified at 8 U.S.C. § 1227(a)(2)(A)(iii); and (2) criminal child abuse under INA § 237(a)(2)(E)(i), codified at 8 U.S.C. § 1227(a)(2)(E)(i).  (Hill Decl. Ex. D.)  A total of three separate removal hearings took place before the IJ in Maryland in September 2003.  (McKenna Decl. Ex. F.)  Defendant, who does not speak English, was not represented by an attorney at any of the hearings—though he was advised that he could obtain counsel.  (Id.)

### 1.   September 15, 2003 Hearing

Defendant's removal hearings began on September 15, 2003.  (McKenna Decl. Ex. A.)  At the outset of the hearing, the IJ advised Defendant that if he disagreed with her decision, he had the right to appeal within thirty days.  (Id.)  In response, Defendant informed the IJ that he was not going to appeal. (Id.)  The matter was continued to September 23, 2003.

### 2.       September 23, 2003 Hearing

At the September 23, 2003 hearing, the IJ ultimately found that Defendant was removable on the basis that he had been convicted of a crime of second degree assault.  (Id. ¶ 8.)  The IJ asked defendant whether he had any family in the United States.  (Id. ¶ 9.) Defendant responded that he had a wife who was a LPR of the United States, and four children in the United States, two of whom were born in the United States.  (Id.)  The matter was continued to September 29, 2003, to enable the IJ to research whether defendant was eligible for relief from deportation.  (Id. ¶¶ 9-10.)

### 3.       September 29, 2003 Hearing

On September 29, 2003, the IJ ordered defendant removed from the United States based on his conviction of a crime of child abuse, pursuant to INA § 237(a)(2)(E)(i), codified at 8 U.S.C. § 1227(a)(2)(E)(i).  (Id. ¶ 12.)[1]  INA § 237(a)(2)(E)(i) states:

> Any alien who *at any time after admission is* convicted of a *crime of domestic violence*, a crime of stalking, or *a crime of child abuse*, child neglect, or child abandonment is deportable. For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section 16 of Title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

8 U.S.C. § 1227(a)(2)(E)(i) (emphasis added).

The IJ also stated that Defendant did not appear to be eligible for any relief, specifically stating that she was exercising her discretion to deny him the ability to depart

---

[1] Although two grounds were asserted for removal, it appears that the aggravated felony conviction was not relied upon for the actual removal order.  (Def.'s Ex. F ¶ 12.)

voluntarily from the United States.  (<u>Id.</u>)  Finally, the IJ concluded the hearing with the following statement:  "Under the law you have the right to file an appeal within 30 days. You may state now whether you wish to file an appeal or whether you waive your right to appeal and wish to accept this as your final order."  (<u>Id.</u> ¶ 13.)  Defendant immediately replied, "I'm not going to appeal."  (<u>Id.</u>)  The IJ then responded, "This is a final order.  We are adjourned."  (<u>Id.</u>)  On November 15, 2003, Defendant was removed from the United States.  (Hill Decl.Ex. E.)

### C.    THE INSTANT ACTION

In April 2009, Defendant was found in the Alameda County jail where he came to the attention of the United States immigration authorities following his arrest and detention for a burglary offense.  (<u>Id.</u> Ex. F.)  Defendant had reentered the United States without permission.  Accordingly, on May 20, 2009, a federal grand jury for the Northern District of California returned a one-count Indictment against Defendant, charging him with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326.

Defendant has filed a motion to dismiss the indictment on the grounds that the deportation order is invalid, and has included a copy of the audio tape of the various hearings before the IJ, which the Court has reviewed.  The Government has filed an opposition to the motion and the Defendant has filed a reply.  The Court heard oral argument on the motion on July 26, 2011.

## II.    <u>LEGAL STANDARD</u>

To establish a violation of 8 U.S.C. § 1326, the Government must prove that (1) the defendant is an alien, (2) who has been denied admission, excluded, deported, or removed, and (3) who thereafter attempted to reenter or was found in the United States without permission of the Attorney General or his or her successor.  A valid removal order is prerequisite to establish a § 1326 violation.  <u>See</u> <u>United States v. Mendoza-Lopez</u>, 481 U.S. 828, 837-39 (1987).

Under § 1326(d), a defendant charged with illegal reentry may seek dismissal of such charge by collaterally attacking the prior removal order. Id.   There are three prerequisites to a collateral attack of a deportation order.   Section 1326(d) states:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section *unless* the alien demonstrates that--
>
>     (1) the alien *exhausted any administrative remedies* that may have been available to seek relief against the order;
>
>     (2) the deportation proceedings at which the order was issued   improperly deprived the alien of the opportunity for judicial review; and
>
>     (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (emphasis added); United States v. Ramos, 623 F.3d 672, 680 (9th Cir. 2010).  "An underlying removal order is fundamentally unfair if an alien's due process rights were violated by defects in the underlying deportation proceeding, and if he suffered prejudice as a result of the defects." Id.

## III.   DISCUSSION

### A.   EXHAUSTION REQUIREMENT

The Government contends that Defendant's motion is improper because he did not exhaust his administrative remedies.  (Opp'n at 4.)  A defendant charged with a violation of 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she did not first exhaust administrative remedies in the deportation proceedings.  8 U.S.C. § 1326(d)(1).  "An alien is barred under 8 U.S.C. § 1326(d) from collaterally attacking his underlying removal order as a defense to § 1326 charges if he *validly waived* the right to appeal that order during the deportation proceedings." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks and citation omitted).  "For a waiver to be valid, the government must establish by 'clear and convincing evidence' that the waiver is 'considered and intelligent.'" United States v. Pallares-Galan, 359 F.3d 1088,

1097 (9th Cir. 2004) (internal citations omitted).  "An alien who is not advised of his rights cannot make a "considered and intelligent" waiver, and is thus not subject to the exhaustion requirement of 8 U.S.C. § 1326(d).  Ubaldo-Figueroa, 364 F.3d at 1049-1050; Pallares-Galan, 359 F.3d at 1096.

Generally, "A waiver of the right to appeal is 'considered and intelligent' when the IJ explains the right to appeal and then specifically asks the defendant if he or she wanted to appeal the deportation order."  United States v. Estrada-Torres, 179 F.3d 776, 780-81(9th Cir. 1999), overruled on other grounds by United States v. Rivera–Sanchez, 247 F.3d 905 (9th Cir. 2001) (en banc).  Here, the IJ unequivocally informed defendant that he had thirty days to file an appeal in the event he disagreed with the IJ's decision.  The IJ also asked defendant whether he desired to file an appeal.  Defendant responded by declining to file an appeal at both of the IJ's hearings.

Defendant claims that his response was not considered and intelligent because "the IJ failed to explain the concept of appeal waiver to him, and also failed to make clear that he had 30 days to decide whether he wished to file an appeal; instead the IJ explicitly prompted him for an immediate response as to whether he was going to appeal."  (Reply at 2.)  Defendant attempts to analogize this case to Pallares-Galan, where the Ninth Circuit noted that "the IJ's failure to offer [the defendant] even a few moments to actually 'consider' his right to appeal, not to mention time to consult an attorney, supports our conclusion that we cannot fairly deem Pallares' waiver 'considered' or 'intelligent.'"  359 F.3d at 1098.  However, the defendant in Pallares-Galan never actually stated that he was waiving his right to appeal, and instead, was obviously confused about the appeals process.  Id.  Here, Defendant expressly declined his right to appeal and did not express any confusion about the appeals process.  Nor, based on the Court's review of the audio tape from the hearings, is it apparent that the IJ rushed the Defendant to provide an answer.  Indeed, the IJ specifically stated to the Defendant that he "may"—as opposed to "must" indicate whether he was planning on appealing.

1   Defendant's contention that he was not afforded sufficient time to consider whether

2   to appeal is further undermined by the fact that he was advised at the September 15th and

3   September 29th hearings of his right to appeal.  Though Defendant attempts to make much

4   of the fact that he was not represented, the IJ specifically asked Defendant whether he had

5   obtained an attorney or was planning on representing himself—even though he had no

6   constitutional right to counsel.[2]  See Lozada v. INS, 857 F.2d 10, 13 (1st Cir. 1988) (no

7   constitutional right to counsel in deportation proceedings); United States v. Campos-

8   Asencio, 882 F.2d 506, 509(5th Cir. 1987) ("Because deportation proceedings are deemed

9   to be civil, rather than criminal, in nature, petitioners have no constitutional right to counsel

10  under Sixth Amendment."); Magallanes-Damian v. INS, 783 F.2d 931, 933 (9th Cir. 1986).

11  In addition, since Defendant had two weeks between hearings to consult with an attorney

12  and to decide whether an appeal would be in his best interest, the record does not support

13  Defendant's contention that the IJ prompted him for an "immediate response" at the

14  September 29th hearing.

15      Thus, the Court finds that Defendant's attempt to collaterally attack his removal

16  order is barred by his failure to exhaust.

17      **B.    THE REMOVAL PROCEEDINGS WERE NOT FUNDAMENTALLY UNFAIR**

18          **1.    The Removal Order is Valid**

19      Even if Defendant had exhausted his administrative remedies, the Court denies the

20  instant motion on the ground that he has not demonstrated that the removal order was

21  invalid.  Under INA § 237(a), aliens who have been convicted of crimes against a child are

22  subject to deportation.  8 U.S.C. § 1227(a)(2)(E)(i) ("Any alien who at any time *after*

23  *admission* is convicted of a crime of domestic violence, a crime of stalking or a crime of

24

25

26

27          [2] The IJ questioned defendant in all three hearings regarding defendant's intention to
    seek assistance of counsel.  The IJ and defendant were clear that defendant was going to
28  proceed without the assistance of an attorney.

1   child abuse, child neglect, or child abandonment is deportable.") (emphasis added).[3]

2   "[T]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of

3   the alien into the United States after inspection and authorization by an immigration

4   officer."  8 U.S.C. § 1101(a)(13)(A).

5          Defendant argues that because he entered the United States without inspection and

6   authorization, he was not "admitted" in the country.  Since a deportation order under

7   8 U.S.C. § 1227(a)(2)(E)(i) specifies "after admission," Defendant posits that he could not

8   be deported under that provision.  (Mot. at 6-8.)   This contention is misplaced.  At the time

9   the removal proceedings took place in September 2003, the Board of Immigration Appeals

10  had considered and rejected the same argument that Defendant is now making before this

11  Court, and held that LPR (i.e., lawful permanent resident) status is sufficient to deem the

12  alien "admitted" for purposes of removal.  In In re Rosas-Ramirez, 22 I. & N. Dec. 616,

13  619 (B.I.A.1999), an alien convicted of an aggravated felony attempted to challenge her

14  removal order claiming, as here, that she had not been lawfully admitted to the United

15  States.  The BIA rejected this contention:

16

17              The respondent, having been accorded the privilege of residing
                permanently in the United States as an immigrant in accordance
18              with section 245A of the Act, has been "lawfully admitted for
                permanent residence" under the definition in section 101(a)(20).
19              The question presented in this case is whether the phrase "after
                admission" in section 237(a)(2)(A)(iii) includes an alien, such
20              as the respondent, who has been "lawfully admitted for
                permanent residence" under the definition in section 101(a)(20)
21              pursuant to a grant of adjustment of status. We find that it does.
22

23  Id.; see also Guevara v. Holder, --- F.3d ----, 2011 WL 2163964, at *3 (9th Cir. June 3,

24  2011) (citing Rosas-Ramirez with approval).

25         The Ninth Circuit also has rejected Defendant's argument.  In Ocampo-Duran v.

26  Ashcroft, 254 F.3d 1133, 1134-35 (9th Cir. 2001), the alien entered the United States

27        [3] Deportable is used interchangeably with removable. "Deportation' means removal
    from the United States . . . ."  See People v. Bautista, 115 Cal. App. 4th 229, 237 n.5 (2004)
28  (citing Barber v. Gonzales, 347 U.S. 637, 640-642 (1954).

without inspection in 1981, but adjusted to LPR status in 1989.   In 1995, the alien was

convicted of felony assault with a deadly weapon.  In 1998, the INS commenced removal

proceedings against the alien under INA § 237(a)(2)(A)(iii).  On appeal, the alien argued

that he was not removable under INA § 237(a)(2)(A)(iii) because he was never admitted for

purposes of the statute.  Id. at 1134.  The court rejected this argument, finding that his

adjustment of status was sufficient to establish his admission.  The court explained:

> Ocampo-Duran was "lawfully admitted" as a legal permanent
> resident before he was convicted of committing an aggravated
> felony.  See INA § 101(a)(20) (defining "lawfully admitted for
> permanent residence" to mean "the status of having been
> lawfully accorded the privilege of residing permanently in the
> United States as an immigrant . . . .").  Ocampo-Duran has not
> explained why Congress would create a loophole in the removal
> laws for aliens who enter the country without inspection, adjust
> their status, and then commit aggravated felonies. Accordingly,
> we reject Ocampo-Duran's overly-narrow interpretation of
> § 237(a)(2)(A)(iii).

Id. at 1134-35.  Similarly, Defendant herein adjusted his status to LPR as of May 22, 2000,

and thus was "admitted" for purposes of the INA prior to his child sexual abuse conviction

in 2002.  Thus, under Rosas-Ramirez and Ocampo-Duran, the Court finds that Defendant

was "admitted."

Defendant relies on the Fourth Circuit's decision in Aremu v. Department of

Homeland Security, 450 F.3d 578, 582-83 (4th Cir. 2006), which held that the date an alien

adjusts to LPR status does not qualify as the date of admission under 8 U.S.C.

§ 1101(a)(13)(A) where the defendant was previously admitted as a non-immigrant visitor.[4]

However, Aremu expressly declined to reach the issue now before this Court, stating that:

"[W]e express no opinion on whether adjustment of status may properly be considered 'the

date of admission' where the alien sought to be removed has never been 'admitted' within

the meaning of § 1101(a)(13)(A)."  Id. at 583 (citing Ocampo-Duran, 254 F.3d at 1135 and

---

[4] Defendant contends that because the removal proceedings took place in Maryland,
Fourth Circuit law controls.  The Government does not challenge this assertion.

1   Rosas-Ramirez, 22 I. & N. Dec. at 623).  Indeed, as the Government points out, Aremu

2   appears to support the holdings of Ocampo-Duran and Rosas-Ramirez, as the Fourth

3   Circuit observed that "a conclusion that the date of adjustment of status qualifies as a 'date

4   of admission' might be justified through application of the settled rule that a court must, if

5   possible, interpret statutes to avoid absurd results."  Id.  Notably, the Ninth Circuit has

6   recognized the absurd result that would occur if courts were to adopt the argument

7   advanced by the Defendant.  See Ocampo-Duran, 254 F.3d at 1135 ("Ocampo-Duran has

8   not explained why Congress would create a loophole in the removal laws for aliens who

9   enter the country without inspection, adjust their status, and then commit aggravated

10  felonies.  Accordingly, we reject Ocampo-Duran's overly-narrow interpretation of

11  § 237(a)(2)(A)(iii).").  Thus, the Court finds that Defendant was convicted of child abuse

12  "after admission," and that the deportation order was proper.

13                    **2.      Defendant Was Not Denied Due Process**

14          As an alternative ground for attacking the validity of the underlying deportation

15  order, Defendant contends that he was denied due process as a result of the IJ's alleged

16  failure to advise him regarding the availability of a § 212(h) waiver.[5]  "Section

17  212(h)(1)(B) of the INA gives the Attorney General the discretion to waive the immigration

18  consequences of certain criminal convictions if a person demonstrates that her removal or

19  denial of admission would result in extreme hardship to a U.S. citizen family member."

20  Lanier v. United States Attorney General, 631 F.3d 1363, 1365 (11th Cir. 2011); 8 U.S.C.

21  § 1182(h)(1)(B).  "The 212(h) waiver has traditionally been available if: (1) the alien can

22  demonstrate that her removal would result in extreme hardship to the alien's U.S. citizen or

23  lawfully resident spouse, parent, son or daughter; and (2) the Attorney General determines

24  _____

25          [5] Defendant's argument regarding the IJ's alleged failure to adequately advise him
    regarding a § 212(h) waiver overlaps with the issue of exhaustion and the fundamental
    unfairness of the removal hearing.  See Muro-Inclan, 249 F.3d at 1183 (noting that the

26  "failure of the IJ or any immigration official to correctly advise defendant of his eligibility
    for a 212(h) waiver—and the affirmative statement that he was not eligible for any form of

27  relief—excuses defendant from the administrative remedies exhaustion requirement of his
    collateral attack under 8 U.S.C. § 1326(d)(1).");  Moran-Enriquez v. INS, 884 F.2d 420 (9th

28  Cir. 1989).

that the alien merits a favorable exercise of discretion." <u>Yepez-Razo v. Gonzales</u>, 445 F.3d 1216, 1218 n.3 (9th Cir. 2006).[6]  However, an alien previously admitted for lawful permanent residence is ineligible for a § 212(h) waiver if the alien had not "lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States." <u>Id.</u> (citing INA § 212(h), 8 U.S.C. § 1182(h)).

Generally, "if an alien is potentially eligible" for a § 212(h) waiver, "'the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.'" <u>United States v. Arrieta</u>, 224 F.3d 1076, 1079 (9th Cir. 2000); 8 C.F.R. § 1240.11 ("The IJ shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing").  The requirement that the IJ inform an alien of his or her eligibility to apply for relief from removal is "'mandatory,' and 'failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding.'"  <u>Ubaldo-Figueroa</u>, 364 F.3d at 1050.  In the instant case, Defendant contends that the IJ's failure to so advise him regarding the availability of a § 212(h) waiver was erroneous and prejudicial because he allegedly would have sought a § 212(h) waiver had he known he was eligible.

<em>a)      Failure to Concurrently Adjust Status</em>

The Government contends that the IJ did not err because Defendant was not eligible for a "stand alone" § 212(h) waiver in the first instance.  Specifically, the Government contends that a § 212(h) waiver is not available in a deportation proceeding *unless* it is

---

[6] Defendant asserts that he could have sought a §212(h) waiver as a defense against his prior conviction in 2002, which was a crime involving moral turpitude ("CMIT").  Because 212(h) waivers are available for individuals who are "inadmissible" due to CIMT's, Defendant should have been entitled to apply for a 212(h) waiver as a form of relief.  Defendant claims that although he was not charged with removability for a CIMT, his conviction was almost certainly a CIMT.  <u>Matter of Tran</u>, 21 I. & N. Dec. 291, 292, 294 (BIA 1996) (infliction of corporal injury on spouse or child is CIMT).  Defendant would therefore be required to seek a § 212(h) waiver as relief from removal because he was inadmissible for having been convicted of a CIMT.

granted in conjunction with an adjustment of status under INA § 245 or 249.  Though the Ninth Circuit has not addressed this specific issue, there is some circuit authority to support the Government's position.  See Jankowski-Burczyk v. INS, 291 F.3d 172, 175 (2d Cir. 2002) ("Because the §212(h) waiver applies only to aliens on the outside [i.e., outside of the United States] seeking admission into the United States, an alien inside the United States must file an application for adjustment of status application to qualify for §212 (h) relief."); United States v. Moriel-Luna, 585 F.3d 1191, 1198-99 (9th Cir. 2009) (no error where IJ failed to inform alien about § 212(h) waiver where he could not adjust status due to lack of available visas).  This has long been the rule followed by the BIA.  See In re Bernabella, 13  I & N Dec. 42, 43-44 (BIA 1968) ("The benefits of section 212(h) are not available in deportation proceedings unless granted in conjunction with adjustment of status under section 245 or under section 249.").[7]

Defendant argues that since he already had LPR status at the time of the removal proceedings and had not traveled outside the United States, he was entitled to apply for a "stand-alone" § 212(h) waiver; that is, a waiver that can be applied for without simultaneously seeking to adjust status.  As support, Defendant cites the Eleventh Circuit's decision in Lanier, a case in which the alien was subject to removal based on her conviction for an aggravated felony and a CIMT.  The alien sought to file an emergency waiver under § 212(h), which provides, in relevant part, that "[n]o waiver shall be granted under this subsection in the case of an alien *who has previously been admitted to the United States as an alien lawfully admitted for permanent residence . . . .*"  8 U.S.C. § 1182(h).  Both the IJ and the BIA concluded that this provision barred the alien from seeking relief because she had previously been admitted.  The court of appeal disagreed and held that the plain language of § 212(h) does "not apply to those persons who . . . adjusted to lawful

---

[7] At the time of the removal proceeding, the Defendant already had LPR status.  As such, it is unclear to what status the Defendant could have sought to adjust in conjunction with his § 212(h) waiver application.  At the hearing, the Government stated that in order to apply for a § 212(h) waiver, Defendant would have had to first adjust his status *downward* to an inadmissible alien.  The Government did not provide any authority to support this assertion.

permanent resident status *while already living in the United States*."  Id. at 1367 (emphasis added).

Like the alien in Lanier, Defendant was already living in the United States when he adjusted to LPR status.  Thus, Lanier arguably undermines the Government's contention that Defendant was not eligible to seek a § 212(h) stand-alone waiver.  That notwithstanding, Lanier was decided in 2011, well after the Defendant's removal proceeding in 2003 deportation proceeding.  As the Government correctly points out, the IJ's actions must be evaluated based on the law as it existed at the time of the removal proceedings.  United States v. Lopez-Velasquez, 629 F.3d 894, 900-901 (9th Cir. 2010) ("In light of the facts known by the IJ at the 1994 hearing, the IJ did not have a duty to inform Lopez-Velasquez of relief for which he was ineligible.").  At the time of the Defendant's removal proceeding, the existing jurisprudence supported the conclusion that a stand-alone waiver was not available to persons in the Defendant's situation.  As such, the IJ cannot be faulted for failing to advise the Defendant regarding a § 212(h) waiver.

                 *b)*    *Seven-Year Residency Requirement and the "Stop-Time Rule*

The Government next contends that Defendant also was not eligible for a § 212(h) waiver because he had not yet satisfied the seven-year residency requirement by the time of his removal hearing in September 2003.  Section 212(h) provides that:

> No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony *or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien* from the United States.

8 U.S.C. § 212(h) (emphasis added); Monet v. INS, 791 F.2d 752, 752 (9th Cir. 1986) ("[a] discretionary waiver is available to aliens lawfully admitted for permanent residence who have accrued seven years of lawful unrelinquished domicile.") (citation and internal quotation marks omitted).  "Any period of continuous residence or continuous physical

1   presence in the United States shall be deemed to end . . . *when the alien has committed an*

2   *offense* referred to in section 1182(a)(2) of this title that renders the alien ... removable from

3   the United States." 8 U.S.C. § 1229b(d)(1)(B) (emphasis added).   This is known as the

4   "stop-time" rule.  Castillo-Cruz v. Holder, 581 F.3d 1154, 1162 (9th Cir. 2009).

5         Defendant contends that he is not subject to the stop-time rule because he was never

6   "admitted" in to the United States.  Again, Defendant relies on the Eleventh Circuit's

7   decision in Lanier, where the court held that the adjustment of status after the alien entered

8   the United States was insufficient to render him "previously admitted to the United States

9   as an alien lawfully admitted for permanent residence.'"  Lanier, 631 F.3d at 1366-67;

10  Martinez v. Mukasey, 519 F.3d 532, 544-45 (5th Cir. 2008) (holding that the statutory bar

11  to relief under § 212(h) applies only to those persons who held lawful permanent residence

12  at the time they lawfully entered, and were thus "admitted" to, the United States).

13        The Government tacitly concedes that Lanier supports Defendant's contention that

14  the stop-time rule does not apply to him.  (Opp'n at 12.)  However, as discussed, Lanier

15  was decided in 2011, well *after* the removal hearing in 2003.  As such, the IJ's obligation to

16  advise aliens regarding avenues for relief is measured against the state of the law and

17  record at the time of the hearing.  See Lopez-Velasquez, 629 F.3d at 900-901.  At the time

18  of the hearing, Rosas-Ramirez was controlling and held that an alien who enters illegally

19  but later adjusts to lawful status is deemed admitted for purposes of the INA.[8]

20        In any event, irrespective of the applicability of the stop-time rule, Defendant cannot

21  satisfy the seven-year residency requirement of § 212(h).  Defendant entered the United

22  States illegally in November 1988, and adjusted his status to a LPR on May 22, 2000.

23

24        [8] At the hearing, defendant cited Shivaraman v. Ashcroft, 360 F.3d 1142 (9th Cir.
    2004) for the proposition that he was never "admitted" into the United States.  In that case,
25  the defendant appealed the BIA's finding that he committed a crime of moral turpitude
    within five years of the "date of admission"  under INA § 237(a)(2)(A)(i).  Id. at 1143.  On
26  appeal, the Ninth Circuit held that BIA erred in finding that his date of admission for
    purposes of his removal proceeding was the date of his lawful entry to the United States, as
27  opposed to the date he later changed to LPR status.  Despite Defendant's suggestions to the
    contrary, Shivaraman did not address the issue now before this Court, which is whether he
28  should, in fact, be deemed "admitted" into the United States.

1   Defendant's deportation proceedings began on September 15, 2003, for the criminal

2   conduct to which he pled guilty on March 15, 2002.  Accordingly, at the time of the

3   deportation proceedings, Defendant had been lawfully residing continuously in the United

4   States for only three years, which is far short of the seven year lawful residential safe

5   harbor.

6           Equally unavailing is Defendant's reliance on Jankowski-Burczyk v. INS, 291 F.3d

7   172,175 (2d Cir. 2002), Francis v. INS, 532 F.2d 268, 273 (2d Cir. 1976), Yeung v. INS, 76

8   F.3d 337, 340-41 (11th Cir. 1995)[9], and Lanier, 631 F.3d at 1365, to support his contention

9   he may assert a stand-alone waiver.  In each of those cases, the defendants satisfied the

10  seven-year residency requirement (i.e. Jankowski was admitted in 1985, and subsequently

11  entered a plea of guilty to aggravated felony in 1999; Francis was admitted in Sept. 1961,

12  and subsequently convicted of drug charges in Oct. 1971; Lanier was admitted in 1992 and

13  was found removable in 2007 based on crime involving moral turpitude).  Because the

14  Defendant in this case had not satisfied the seven-year residency requirement, those cases

15  do not help his cause.  In sum, because Defendant was statutorily barred from obtaining a

16  §212(h) waiver, the IJ could not have erred in failing to advise him regarding such a

17  waiver.

18                 c)      Prejudice

19          "To prevail on a motion to dismiss an indictment on the basis of an alleged due

20  process defect in an underlying deportation proceeding, a defendant must not only establish

21  that the defects in the deportation proceeding violated his due process rights, but also show

22  that he suffered prejudice as a result of those defects."  Ramos, 623 F.3d at 683-84.  "[A]n

23  alien seeking to collaterally attack removal order underlying illegal reentry prosecution

24  does not have to show that he actually would have been granted relief; instead, he must

25  only show that he had a "plausible" ground for relief from deportation.  Arrieta, 224 F.3d

26

27  _____

28          [9] In Yeung, it is unclear when defendant was admitted. The only reference to his
    admission is defendant's marriage to his wife who was a LPR.

1    at 1079.  In the instant case Defendant fails to show that he has been prejudiced because he

2    cannot show a plausible ground for a § 212(h) extreme hardship waiver.

3         Both parties cite In re Mendez-Moralez, 21 I & N Dec. 296 (BIA 1996) as setting

4    forth the standard for determining whether an extreme hardship waiver was plausible in

5    2003.  Mendez-Moralez instructs the IJ to balance the "equities" and "adverse matters."  Id.

6    at 301.  Adverse matters refer to the alien's criminal record, including "its nature, recency

7    and seriousness, and the presence of other evidence indicative of an alien's bad character or

8    undesirability as a permanent resident of this country."  Id.  Favorable considerations

9    "include family ties in the United States, residence of long duration in this country

10   (particularly where the alien began his residency at a young age), evidence of hardship to

11   the alien and his family if he is excluded and deported, service in this country's Armed

12   Forces, a history of stable employment, the existence of property or business ties, evidence

13   of value and service to the community, evidence of genuine rehabilitation if a criminal

14   record exists, and other evidence attesting to the alien's good character (e.g., affidavits

15   from family, friends, and responsible community representatives)."  Id.  "The equities that

16   the applicant for section 212(h)(1)(B) relief must bring forward to establish that he merits a

17   favorable exercise of administrative discretion will depend in each case on the nature and

18   circumstances of the ground of exclusion sought to be waived and on the presence of any

19   additional adverse matters, and as the negative factors grow more serious, it becomes

20   incumbent upon the applicant to introduce additional offsetting favorable evidence."  Id.

21        In Mendez-Moralez, the defendant-alien had a wife and three children in the United

22   States.  Defendant's wife suffered from psychological disorders and defendant supported

23   his family financially and emotionally.  The BIA balanced those factors against his criminal

24   conviction, which involved defendant's sexual assault of a 13-year old girl.  In affirming

25   the IJ's denial of an extreme hardship waiver, the BIA ruled that the nature of his crime

26   outweighed the equities in his favor, stating that there is "an obligation to consider the

27   welfare and safety of the other citizens and residents of this country.  Id. at 304-05.

28

1       In the instant case, Defendant argues that substantial equities weigh in his favor.  He

2 points out that his spouse and two children (Esperanza and William) are United States

3 citizens and that he has been an excellent father.  In addition, he presents a declaration

4 evidencing the financial and emotional hardship resulting from his deportation.  However,

5 like the defendant in Mendez-Morales, the considerations that weigh in favor of Defendant

6 are outweighed by his serious and egregious criminal conduct; namely, multiple instances

7 of sexual abuse of his own daughter.[10]

8       Moreover, the hardships articulated by Defendant are essentially those that typically

9 result from a deportation.  See United States v. Arce-Hernandez, 163 F.3d at 564 (9th Cir.

10 1998) ("extreme hardship requires: "'great actual or prospective injury' or extreme impact"

11 on the citizen family member, beyond the 'common results of deportation.'); In re Ngai, 19

12 I & N Dec. 245, 245-47 (BIA 1984) ("'common results' of deportation, 'such as separation,

13 financial difficulties, etc…in themselves are insufficient to' constitute extreme hardship.").

14 Because the hardships (i.e., not being a presence in Esperanza and William's life, and not

15 being able to financially support his family) are the results of separation and therefore

16 common results of deportation, they do not rise to the level of extreme hardship.

17 Therefore, even if the IJ had advised Defendant that he could seek a waiver, and he actually

18 applied for one, the record does not support that he had a plausible chance of obtaining a

19 waiver.

20 //

21 //

22 //

23 //

24 //

25

---

26       [10] Defendant contends that the characterization of his conduct as sexual abuse was
made by the prosecutor at the change of plea hearing, as opposed to any direct admission
27 made by him.  However, it is notable that the trial court afforded the Defendant the
opportunity to correct or modify the prosecutor's statement, but he declined to do so.  (Hill
28 Decl. Ex. at 15:19-20:12.)

1

**IV.** **CONCLUSION**

2

For the reasons set forth above,

3

IT IS HEREBY ORDERED THAT Defendant's motion to dismiss is DENIED.  The

4

parties shall appear in Court for a status and trial setting conference on **September 19,**

5

**2011 at 10:00 a.m.**

6

IT IS SO ORDERED.

7

Dated:  September 13, 2011

8

SAUNDRA BROWN ARMSTRONG
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28